UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAMONT SHOLAR,

        Plaintiff,

        v.                                 Case No. 25-cv-0696-bhl

RACHEL MATUSHAK,
CAPTAIN MATUSHAK,
SGT. BAHMKE,
CO WALTON,
NURSE KILMER,
GARLAND,
D. WINKLESKI,
J. LUDWIG, and
MOON,

        Defendant.

---

## SCREENING ORDER

---

      Plaintiff Lamont Sholar, who is currently serving a state prison sentence at the Redgranite Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On June 16, 2025, Sholar paid the $405 civil case filing fee. On July 7, 2025, Sholar filed an amended complaint, Dkt. No. 11, which he is allowed to do once at this stage of the case without the Court's permission. *See* Fed. R. Civ. P. 15. Sholar also filed a motion for a temporary restraining order and/or preliminary injunction. Dkt. No. 13. This decision screens Sholar's amended complaint and resolves his motion for a temporary restraining order and/or preliminary injunction.

**SCREENING OF THE AMENDED COMPLAINT**

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

Nearly a decade ago, in the fall of 2016, while he was incarcerated at the Columbia Correctional Institution, Sholar began to complain of foot pain. Over the course of two years, Sholar was evaluated by several outside specialists and tried various shoes to address his pain, but it was not until the end of 2020 that he was allowed to order a pair of shoes that he asserts fully addressed his pain: a pair of Nike Jordan Max. Initially, the property sergeant at Columbia Correctional refused to allow Sholar to have the Nikes, but that issue was eventually resolved. Sholar filed a lawsuit in the Western District of Wisconsin, and Sholar ultimately agreed to dismiss the case in exchange for $5,000.

In July 2022, Sholar was transferred to Green Bay Correctional Institution (GBCI). According to Sholar, he was informed by Nurses Kilmer and Matushak that GBCI does not allow prisoners to purchase shoes from non-approved vendors, but he would be allowed to keep the shoes he already owned. He also states that he was informed that a new pair of state-issued medical shoes would be ordered for him since the ones he had "were on their last leg." Sholar explains that, more than two years later, on December 30, 2024, he was called to the health services unit and issued a new pair of state-issued medical shoes. Sholar asserts that Nurse Kilmer informed him that security—not the health services unit—may have an issue with him possessing his Nikes, which Sholar characterizes as his "personal medical shoes," now that he was receiving new state-issued medical shoes. According to Sholar, he told Nurse Kilmer that his personal shoes had been medically approved at the prior institution and if there was a security issue with the shoes, then he would not have been allowed to keep them for the last two and a half years. Nurse Kilmer allegedly

informed Sholar that policy does not allow health services to permit patients to order items from non-approved vendors. Sholar asserts that is a lie.

Sholar explains that soon after he returned to his cell from health services, a sergeant informed him that Nurse Matushak had instructed the sergeant to confiscate the Nikes because they were contraband. Sholar asserts that he showed the sergeant paperwork regarding the Nikes, after which the sergeant decided that he did not want to get involved. A few days later, on January 2, 2025, CO Everson allegedly told Sholar that he had gotten a call from Sgt. Bahmke who had been instructed by Cpt. Matushak from security to confiscate the Nikes. Sholar explains that he showed Sgt. Bahmke his paperwork about the Nikes, but Sgt. Bahmke allegedly told Sholar he did not care and that the Nikes were contraband. Sgt. Bahmke then took the Nikes. Sholar explains that he called the property room and was informed by CO Walton that he could mail the Nikes out, have then destroyed, or receive a conduct report for possession of contraband and disobeying orders. Sholar asserts that Cpt. Matushak was also in the property room, so Sholar explained to Cpt. Matushak and CO Walton that the Nikes had been previously approved and that recharacterizing the shoes as contraband after four years was wrong. Cpt. Matushak and CO Walton were unpersuaded.

Sholar explains that he wrote to health services on January 8, 2025, asking that the special needs approval for his personal shoes that he had received while at Columbia Correctional be transferred to GBCI. Nurse Kilmer responded that, per policy, health services may not allow a patient to order from non-approved vendors. She instructed Sholar to work with property and to order personal shoes from an approved vendor. Dkt. No. 11-1 at 13. A couple of days later, on January 10, 2025, Nurse Hennig responded to Sholar's complaints that his new medical shoes caused his feet to sweat and itch by instructing him to let health services know that he would like

to be seen by a nurse during sick call. *Id.* at 15. It is not clear if Sholar complied with Nurse Henning's instructions.

Sholar filed an inmate complaint about the confiscation of the Nikes. During the investigation, Health Services Manager Garland informed the institution complaint examiner that because Sholar had received new state-issued medical shoes, the Nikes were no longer approved as medical shoes. *See* Dkt. No. 1-1 at 17-18. The inmate complaint was dismissed, and the dismissal was affirmed on appeal.

Sholar was transferred from GBCI to the Redgranite Correctional institution in the Spring of 2025. Sholar explains that he reached out to the institution complaint examiner's office to confirm that the Nikes would be transferred to Redgranite Correctional because they were not in his property. Institution complaint examiner Moon reminded Sholar that they Nikes had been the subject of an inmate complaint that he had filed while at GBCI and that the shoes had been deemed contraband. She stated that the appeal was decided on May 12, 2025, so he now had to decide what he wanted to do with the Nikes. She informed him that if he wanted to send the shoes out, he had to send her a disbursement request to cover the shipping fees. Moon stated that she would relay his decision to GBCI. She gave Sholar until June 30, 2025 to decide. Dkt. No. 11-1 at 30.

## THE COURT'S ANALYSIS

Sholar sues eight individuals because he wants to continue to wear his Nikes, which staff at a prior institution allowed him to use as "personal medical shoes" to address his complaints of foot pain. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations

5

omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id.* (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)). The Seventh Circuit has repeatedly stressed that "different views among physicians about reasonable treatments does not establish deliberate indifference or entitle an inmate to his preferred treatment." *Franklin v. Hannula*, 850 F. App'x 436, 439 (7th Cir. 2021) (holding that the mere fact that prior medical providers had approved an inmate's use of Nike boots did not entitle the inmate to his preferred treatment).

According to Sholar, he received new state-issued medical shoes in December 2024, after which medical staff decided that the Nikes he had been using for years were no longer medically indicated. Once the Nikes were no longer medically indicated, they became contraband because Sholar had ordered them from a non-approved vendor and policy allows inmates to possess personal shoes only if they are ordered from an approved vendor. Sholar disagrees with the reclassification of his shoes (from medical to personal) and with the policy that prohibits him from possessing them. He explains that the new medical shoes cause his feet to sweat and itch and that they are a half size too big, so his feet move around, causing blisters. But, despite Nurse Henning's suggestion that Sholar raise these concerns with a nurse, it does not appear that Sholar sought further evaluation from a provider. Instead, Sholar merely demanded that he be allowed to continue to wear the Nikes when he was not wearing the state-issued medical shoes.

Although the Court will presume that Sholar has sufficiently alleged that his foot pain is an objectively serious medical condition, the Court cannot reasonably infer that any of the Defendants were deliberately indifferent to that condition. The only involvement by Nurse

Matuchak and Nurse Kilmer appears to have been to inform security staff that Sholar's Nikes were no longer medically necessary after he was issued new medical shoes to address his foot pain. Sholar preferred the Nikes to the new medical shoes, but as noted, he is entitled only to adequate treatment (*i.e.*, medical shoes), not his preferred treatment (*i.e.*, the Nikes). Nor can the Court reasonably infer that Cpt. Matushak, Sgt. Bahmke, or CO Walton acted with deliberate indifference when they confiscated the Nikes after he received new medical shoes. Sholar highlights that he was allowed to possess the shoes for years, but he ignores that he was allowed to possess them as an exception to the general policy that prohibits prisoners from possessing shoes ordered from non-approved vendors. Once that exception no longer applied (*i.e.*, the Nikes were no longer medically required), then the shoes became contraband because they had been ordered from a non-approved vendor. Security staff is entitled to enforce the institution's policies, and the Court will not second guess the wisdom of those decisions. *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

Sholar also fails to state a claim against Health Services Manager Garland, reviewing institution complaint examiners Winklenski and Moon, and reviewing authority Ludwig, all of whom were involved in the investigation of and ruling on his inmate complaints. None of these individuals were involved in the confiscation of Sholar's shoes. Although Sholar disagrees with their conclusions, it is well settled that "[o]nly persons who cause or participate in the violations are responsible" and "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007).

Finally, because Sholar fails to state a claim in connection with the confiscation of the Nikes, the Court will deny as moot his motion for a temporary restraining order and/or preliminary injunction seeking the return of those shoes.

The Seventh Circuit has explained that the norm is to afford a plaintiff at least one opportunity to amend his complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Accordingly, if Sholar believes he can cure the deficiencies identified in this decision, he may file a second amended complaint by **September 11, 2025**. He is advised that the seconded amended complaint will replace the prior complaints and must be complete in itself without reference to the prior complaints. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If a second amended complaint is received by the deadline, the Court will screen it as required by 28 U.S.C. §1915A. If a second amended complaint is not received, the Court will dismiss this action based on Sholar's failure to state a claim in his amended complaint. If Sholar does not believe he can cure the deficiencies identified in this decision, he does not have to do anything further. The Court will enclose an amended complaint form along with this decision. Sholar must use the form. *See* Civil L. R. 9(b). If he needs additional space, he may attach up to five additional pages.

**IT IS THEREFORE ORDERED** that, because the amended complaint fails to state a claim upon which relief can be granted, Sholar's motion for a temporary restraining order and/or preliminary injunction (Dkt. No. 13) is **DENIED as moot**.

**IT IS FURTHER ORDERED** that on or before **September 11, 2025,** Sholar may file a second amended complaint if he believes he can cure the defects in the amended complaint as described in this decision.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Sholar a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions," along with this order.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Sholar is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on August 13, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge