UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAMONT SHOLAR,

        Plaintiff,

        v.                                    Case No. 25-cv-0696-bhl

RACHEL MATUSHAK et al.,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Lamont Sholar, who is currently serving a state prison sentence at Redgranite Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court to screen the third amended complaint, Dkt. No. 20, which Sholar filed with the Court's permission, Dkt. No. 19. *See* 28 U.S.C. §1915A.

### SCREENING OF THE THIRD AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short

and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

## ALLEGATIONS OF THE THIRD AMENDED COMPLAINT

According to Sholar, on December 30, 2024, while incarcerated at Green Bay Correctional Institution, Nurse Kilmer called him to the health services unit so she could give him a new pair of state-issued medical shoes. Sholar explains that the Orthofeet shoes he was given were not the BIOFIT shoes listed in his care plan. Nurse Kilmer allegedly informed Sholar that the Orthofeet shoes would work just as well and that he should just try them. He states that after he received the new shoes, his BIOFIT shoes and a pair of personal shoes that had adequately addressed his foot pain were confiscated. About a week later, Sholar allegedly filed three health services requests stating that the new Orthofeet shoes were causing him severe pain because he was unable to use his custom orthotics in them. He also stated that the Orthofeet shoes caused his feet to sweat and itch and that he was developing blisters. Sholar asserts that he asked that his BIOFIT shoes and personal shoes be returned to him.

On January 10, 2025, Nurse Kilmer allegedly denied Sholar's request even though she knew the new shoes were causing him pain. According to Sholar, Nurse Kilmer violated policy by responding to his request instead of forwarding it to the special needs committee for consideration. On January 20, 2025, Sholar wrote to Health Services Manager Garland about the issue, but, according to Sholar, Garland ignored Sholar's concerns. About a month later, on February 14, 2025, Sholar submitted another health services request and was seen by a nurse, who allegedly told him he needed to raise his concerns with the special needs committee.

Sholar explains that on April 10, 2025, he filed another health services request about foot pain and was again scheduled to see a nurse. Sholar asserts that once again he was directed to raise his concerns with the special needs committee. According to Sholar, he eventually told Nurse Matushak what was happening, and she merely replied that nothing would be done, so he would be better off not filing any more request slips. Sholar asserts that sometime in April a provider prescribed antifungal powder to address Sholar's complaints of sweaty, itchy feet. On May 6, 2025, Sholar allegedly submitted another health services request about not being able to use his orthotics in his new shoes. Sholar asserts that Nurse Kilmer informed him he could use his orthotics in his BIOFIT shoes even though he no longer had those shoes because he had returned them when he received the Orthofeet shoes.

Not long after, Sholar was transferred to Redgranite Correctional Institution. He states that he complained about the Orthofeet shoes to Nurse Bretzel on June 5, 2025, and told her that his old BIOFIT shoes had really helped with his foot pain. Nurse Bretzel allegedly ordered Sholar a new pair of shoes, but they ended up being the same shoes, just half a size bigger. Sholar asserts that these shoes caused additional pain because his orthotics would slide back and forth. When Sholar again complained, she allegedly told him that she was not going to order a different shoe. Sholar raised his concerns with Health Services Manager Thompson, but she allegedly told him to write an inmate complaint because she was not going to intervene.

On June 26, 2025, Sholar submitted another health services request about his foot pain. He states that he was given plantar fasciitis splints, but those caused extreme discomfort. Sholar explains that he filed a final health services request on July 4, 2025, which was not addressed. He states that "he had no choice but to file another complaint" against Nurse Bretzel and Thompson,

3

after which his medical shoe restriction and orthotic restriction were removed. Sholar asserts that he is in constant pain and that his daily activities are impacted.

## THE COURT'S ANALYSIS

Sholar asserts that Defendants were deliberately indifferent to his severe foot pain when they replaced his medical shoes and refused to address his complaints that the new shoes caused him significant pain and discomfort. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks: 1) "whether a plaintiff suffered from an objectively serious medical condition" and 2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (en banc)).

Based on the foregoing, the Court will allow Sholar to proceed on an Eighth Amendment claim against Nurses Matushak, Kilmer, and Bretzel based on allegations that they refused to address his repeated complaints that his new medical shoes caused him significant pain and that they did not fit his custom orthotics. He may also proceed on an Eighth Amendment claim against Health Services Managers Garland and Thompson based on allegations that they dismissed or ignored Sholar's complaints that medical staff was refusing to address his complaints of significant foot pain.

**IT IS THEREFORE ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Sholar's third amended complaint

(Dkt. No. 20) and this order are being electronically sent today to the Wisconsin Department of Justice for service on Rachel Matushak, Nurse Kilmer, Garland, Ms. Bretzel, and Ms. Thompson.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Rachel Matushak, Nurse Kilmer, Garland, Ms. Bretzel, and Ms. Thompson shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

Dated at Milwaukee, Wisconsin on October 31, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge